NOT FOR PUBLICATION

NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ANTHONY TRUCHAN | : | |
| Plaintiff, | : | Civil Action No. 15-324 (SRC)(CLW) |
| v. | : | |
|  | : | |
| NUTLEY POLICE DEPARTMENT, OFFICER ANDREW VAN DORN, PATROLMAN JOSEPH STEWART, OFFICER RODRIGUEZ, TOWNSHIP OF NUTLEY, OFFICER JOHN AND JANE DOES, individually named police officers whose identities are unknown, | : | OPINION |
| Defendants. | : | |

**CHESLER**, District Judge

This matter comes before the Court on the motion for summary judgment by Defendants Nutley Police Department, Officer Andrew Van Dorn, Officer Joseph Stewart, Officer Rodriguez, and Township of Nutley (collectively, "Defendants") [Docket Entry 15]. Plaintiff Anthony Truchan ("Plaintiff") opposes the motion [Docket Entry 19]. The Court has considered the papers filed by the parties and proceeds to rule on the motions without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, the Court will grant in part and deny in part Defendants' motion for summary judgment.

I.  **BACKGROUND**

This case arises from the interaction between Plaintiff Anthony Truchan and Nutley police officers when they came to his home to serve him with a Temporary Restraining Order (TRO) on the night of November 14, 2013. As background, Plaintiff and his wife, Grace Truchan ("Mrs. Truchan"), have a history of domestic violence; police records show that Nutley

1

Police reported to the Truchans' joint home more than 30 times in 2013 and 2014. (Plaintiff's Statement of Facts [hereinafter "PSF"], ¶ 22; Defendants' Responsive Statement of Facts [hereinafter "DSF"], ¶ 22; Jean Cert. Ex. 14). Plaintiff and Mrs. Truchan have filed multiple TROs against one another in the past. (PSF, ¶¶ 8, 13, 19; DSF, ¶¶ 8, 13, 19).

On November 14, 2013, Plaintiff called the police claiming that his wife, Mrs. Truchan, drove over his foot while the couple's daughter was a passenger in her car. (PSF, ¶ 25; DSF, ¶ 25). A Nutley police officer arrived at the couple's home at 6:00 PM in response to the call. (PSF, ¶ 25; DSF, ¶ 25). The officer did not observe any dirt or deformity on Plaintiff's foot and detected a strong odor of alcohol on Plaintiff's breath. (PSF, ¶¶ 26-27; DSF, ¶¶ 26-27; Jean Cert. Ex. 8).[1] Plaintiff refused medical attention. (Jean Cert. Ex. 8).

A few hours later, at approximately 10:53 PM, Mrs. Truchan and the couple's ten-year-old daughter came to Nutley Police headquarters. (PSF, ¶ 29; DSF, ¶ 29; Jean Cert. Ex. 9). Mrs. Truchan applied for a TRO and certified a New Jersey Domestic Violence Civil Complaint, stating that Plaintiff was harassing her by saying that she ran over his foot and was going to be arrested. (PSF, ¶ 30; DSF, ¶ 30; Jean Cert. Ex. 10). The Truchans' ten-year-old daughter reported to Officer Stewart that Mrs. Truchan did not drive over Plaintiff's foot. (PSF, ¶ 31; DSF, ¶ 31; Jean Cert. Ex. 9). Plaintiff arrived at the Nutley Police headquarters at 1:44 AM searching for Mrs. Truchan and their daughter, but he left at 2:14 AM. (PSF, ¶ 33; DSF, ¶33). At approximately 2:21 AM, Irvington Judge Karimu F. Hill-Harvey granted the TRO over the phone. (PSF, ¶ 37; DSF, ¶ 37; Jean Cert. Ex 10). The Order barred Plaintiff from remaining in

---

[1] Plaintiff admits to the contents of the police report, and admits to drinking three to four beers the day of the incident, but denies being under the influence of alcohol. (PSF, ¶¶ 23, 26-27; DSF, ¶¶ 23, 26-27).

his home that he shared with his wife and children, and indicated that law enforcement officers would serve and fully enforce the order. (Jean Cert. Ex. 10).

Mrs. Truchan and the child left police headquarters at 3:54 AM to head home, and soon after Officers Stewart, Rodriguez, and Van Dorn also arrived at the Truchan household. (PSF, ¶¶ 38-39; DSF, ¶¶ 38-39). Mrs. Truchan let the officers into the home. (PSF, ¶ 39; DSF, ¶39). The officers told Plaintiff they were going to serve him with a restraining order. (PSF, ¶ 43; DSF, ¶ 43; Truchan Dep. 120:12-14). At this point, Plaintiff admits that he knew the officers wanted him to leave his home. (PSF, ¶ 44; DSF, ¶ 44).

Despite this knowledge, Officer Stewart claims that Plaintiff then began screaming and cursing that Nutley Police had no right to throw him out of his home. (PSF, ¶ 47; DSF, ¶ 47). Plaintiff denies that he was screaming, but admits that he demanded that the officers leave his home. (PSF, ¶¶ 46-47; DSF, ¶¶ 46-47). The officers arrested Plaintiff for Contempt of Domestic Violence Restraining Order under N.J.S.A. § 2C:29-9B. (PSF, ¶ 48; DSF, ¶48). According to Plaintiff, Officer Stewart then handcuffed him, punched him in his rib cage, and smashed his head into his daughter's bedroom door. (PSF, ¶ 49; DSF, 49). Plaintiff also claims that once he was in a police cell, Officer Stewart punched him repeatedly in the chest. (PSF, ¶ 56; DSF, ¶ 56).

Plaintiff was taken to Clara Maass Hospital, where he complained of right wrist pain, headaches, and high sugar levels. (PSF, ¶ 59; DSF, ¶59). Plaintiff's physical examination was positive for "minimal tenderness" of his wrist and a small abrasion in his left wrist. (PSF, ¶ 61; DSF, ¶ 61). He was given Motrin and Insulin, and an ace bandage was applied to his right wrist. (PSF, ¶ 64; DSF, ¶ 64). His headache improved and his vitals were stable. (PSF, ¶ 64; DSF, ¶

64). The next day, Plaintiff complained of a diabetic episode at 1:13 PM, and EMS reported. (PSF, ¶ 66; DSF, ¶ 66).

Based on these events, Plaintiff filed a Complaint alleging unlawful arrest, excessive force, and other constitutional and common law claims. Plaintiff alleges that he suffered bodily injury in the form of bumps on his head, short term dizziness, an injured right wrist, a cut wrist, and scars on his wrist. (PSF, ¶ 67; DSF, ¶ 67).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the

4

burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* FED. R. CIV. P. 56(e) (requiring the nonmoving party to "set out specific facts showing a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

## III.  ANALYSIS

### a.  UNLAWFUL ARREST

Defendants first move for summary judgment on Plaintiff's unlawful arrest claim in Count Two of his Complaint.  There, Plaintiff claims that Defendants violated 42 U.S.C. § 1983, depriving him of rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.  (Compl. ¶¶ 29, 32).

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any Citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  *West v. Atkins,* 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania,* 36 F.3d 1250, 1255-56 (3d Cir. 1994).  It is well established in the Third Circuit that an arrest without probable cause is a constitutional violation actionable under § 1983.  *See Walmsley v. Philadelphia,* 872 F.2d 546 (3d Cir. 1989); *see also, Albright v. Oliver,* 510 U.S. 266, 274 (1994) (a section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures).

To state a claim for false arrest, a plaintiff must allege two elements: (1) that there was an arrest; and (2) that the arrest was made without probable cause.  *Dowling v. City of Philadelphia,* 855 F.2d 136, 141 (3d Cir. 1988). Moreover "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention

pursuant to that arrest." *Groman v. Manalapan,* 47 F.3d 628, 636 (3d Cir. 1995); *Palma v. Atlantic County,* 53 F.Supp.2d 743, 755 (D.N.J. 1999). *See also Anela v. City of Wildwood,* 595 F.Supp. 511, 512 (D.N.J. 1984) (holding a person for any length of time without legal justification may be a violation of the right to liberty under the Fourteenth Amendment and thus states a claim of false imprisonment under § 1983).[2] In contrast, an arrest based upon probable cause does not give rise to claims for false imprisonment or false arrest. *Id.*

While the existence of probable cause is often a question for the jury, where the Defendants' asserted probable cause is such that no reasonable jury could find that the police lacked probable cause, summary judgment is appropriate. *Crock v. Pennsylvania*, 397 F. App'x 747, 749 (3d Cir. 2010) (internal citations omitted). "The proper inquiry in a [S]ection 1983 claim based on false arrest ... is not whether the person arrested in fact committed the offense but whether the arresting officers had *probable cause* to believe the person arrested had committed the offense." *Dowling,* 855 F.2d at 141 (emphasis added). Probable cause exists where "the facts and circumstances within [an officer's] knowledge and of which [that officer] had reasonably trustworthy information [are] sufficient as of themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Edwards v. City of Philadelphia,* 860 F.2d 568, 571 (3d Cir. 1988) (citing *Brinegar v. United States,* 338 U.S. 160, 175-76 (1949)).

---

[2] While "[a] false imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment protection against deprivations of liberty without due process of law[,]" *Baker v. McCollan,* 443 U.S. 137, 142 (1979), the claim is derivative of a Fourth Amendment violation for arrest without probable cause. *See Groman,* 47 F.3d at 636.

Under New Jersey law, "[a] person is guilty of a crime of the fourth degree if he purposely or knowingly disobeys a judicial order or protective order." N.J.S.A. § 2C:29-9. Moreover, the statute provides that:

> When a person claims to be a victim of domestic violence, and where a law enforcement officer responding to the incident finds probable cause to believe that domestic violence has occurred, the law enforcement officer shall arrest the person who is alleged to be the person who subjected the victim to domestic violence and shall sign a criminal complaint if: [. . . (3) t]here is probable cause to believe that the person has violated N.J.S. 2C:29-9 [by disobeying a judicial order], and there is probable cause to believe that the person has been served with the order alleged to have been violated.

N.J.S.A. § 2C:25-21. New Jersey courts have held that even if a defendant has not been served with a TRO, he can be liable for violating it as long as he had actual knowledge of the TRO's provisions. *State v. Mernar*, 345 N.J. Super. 591, 594 (App. Div. 2001) ("The law has long been settled that a contempt action may proceed against a defendant who has actual knowledge of the restraints imposed, even though the injunction was not regularly served. . . If he has notice or knowledge of [the injunction], his conscience is bound, and he is liable to the consequences of its breach to the same extent as if it had been actually served upon him in writing.").

Plaintiff argues that police were not entitled to arrest him under N.J.S.A. § 2C:25-21 because Plaintiff had not been physically served with the restraining order at the time that the police officers arrested him for violating the restraining order. He also denies having knowledge of the TRO's existence.[3] Defendants, on the other hand, argue that Plaintiff had actual notice of

---

[3] In his deposition, Plaintiff argues that "the facts behind the restraining order weren't true" (Truchan Dep. 118:13-22). Construing his argument liberally, he suggests that the restraining order failed to consider that he, not his wife, was the victim because his wife ran over his foot on the day the TRO was issued against him. In the context of a warrant, an officer "is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists." *Dempsey v. Bucknell University*, 834 F. 3d 457, 469 (3d. Cir. 2016) (internal citation omitted). In reviewing probable cause determinations, the "district court must identify any improperly asserted or omitted facts and, if it determines that there were reckless misrepresentations or omissions, 'excise the offending inaccuracies and

8

the restraining order and the order's condition that he leave the home, and thus it did not matter that he was not physically served with the TRO. (Defs.' Br. at 23-24).

Here, Defendants are correct in their argument that Plaintiff had actual knowledge of the TRO. Plaintiff admits that the police told him that they came to his home to serve him with the restraining order. (PSF, ¶ 43; DSF, ¶ 43; Truchan Dep. 120:12-14). He also admits that he knew the officers wanted him to leave his home. (PSF, ¶ 44; DSF, ¶ 44). Plaintiff has had previous experiences with TROs, having obtained a TRO against Mrs. Truchan just two months earlier and Mrs. Truchan having obtained several TROs against him in the past. (PSF, ¶¶ 8, 13, 19; DSF, ¶¶ 8, 13, 19). He knew that he was required to leave the home if a TRO was granted against him. (Truchan Dep. 22:15-23:1; 31:7-32:7; 54:3-11, 122:18-25). Based on Plaintiff's admissions and his history, this Court finds that there is no question of fact that Plaintiff had

---

insert the facts recklessly omitted' from the affidavit and assess whether the reconstructed affidavit would establish probable cause." *Id.* at 470 (internal citation omitted). Here, if the Court is to treat the investigation report used to obtain the temporary restraining order as it treats affidavits used to obtain warrants, this Court is to look at whether the officer who created investigation report from the night in question failed to disclose a discrepancy or made any misrepresentations or omissions. This Court finds, however, that the officer who wrote the report and the Judge who issued the TRO both noted Plaintiff's allegation that Mrs. Truchan had run over his foot. (Jean Cert. Ex. 9; Jean Cert. Ex. 10). The Judge determined that Plaintiff was using this allegation to harass Mrs. Truchan and thus there was probable cause that he was committing domestic violence. (Jean Cert. Ex. 10). Because the officer included Plaintiff's allegation in his investigatory report and the Judge considered the allegation in granting the TRO, Plaintiff is unable to show that the probable cause determination disregarded his version of the facts. Moreover, the officers who later arrested Plaintiff were entitled to rely on the facially valid TRO, regardless of whether it considered Plaintiff's version of facts. *See McRae v. City of Nutley*, No. 12-6011, 2015 WL 6524629, at *7 (D.N.J. Oct. 28, 2015) (citing *Wolfe v. City of Pittsburgh,* 140 F.3d 236, 240 (3d Cir.1998) ("An officer may rely on a facially valid court order, even if it turns out to be based on a false premise."). Here, officers were entitled to rely on the provision in the TRO that specifically required the officers to enforce the order, requiring them to go to Plaintiff's home and tell him to leave. (Jean Cert. Ex. 10). Thus, the relevant question in the probable cause analysis here is whether the arresting officers had probable cause to believe that Plaintiff was violating the TRO, not whether the TRO itself was based in false information.

actual knowledge that he needed to leave the home when police told him that they were at his house to serve him with a TRO. And, instead of leaving, Plaintiff admits that demanded that the officers leave his home. (PSF, ¶¶ 46-47; DSF, ¶¶ 46-47). In turn, the officers had probable cause to believe that Plaintiff was violating the restraining order and thus committing an offense. Because they had probable cause, the Court grants summary judgment in favor of Defendants on the unlawful arrest claim.[4]

### b. EXCESSIVE FORCE CLAIM

Next, Defendants argue that Plaintiff cannot maintain his excessive force claim in Count One. The U.S. Supreme Court has held that Section 1983 claims for excessive force arising "in the context of an arrest or investigatory stop of a free citizen" are most properly analyzed under the Fourth Amendment's guarantee that individuals be free from "unreasonable searches and seizures." *Graham v. Connor,* 490 U.S. 386, 394 (1989). To establish a claim of excessive force under the Fourth Amendment, a plaintiff must demonstrate that, under the totality of the circumstances, the officer's actions were not objectively reasonable in light of the facts and circumstances confronting the officer. *Id.* at 397. The Fourth Amendment reasonableness test requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. For claims of excessive force based on a handcuffing, "a severe injury from handcuffs can support a finding of excessive force, and in the absence of an injury, some other

---

[4] Defendants also move for summary judgment on the grounds that they are entitled to qualified immunity for Plaintiff's unlawful arrest claim. Because the Court finds that there was probable cause for the arrest, the Court need not reach the qualified immunity analysis. Additionally, the Court need not reach Defendants' specific immunity argument.

evidence, such as 'obvious visible indicators of pain,' will be required." *Velius v. Twp. of Hamilton*, 754 F. Supp. 2d 689, 694 (D.N.J. 2010), *aff'd*, 466 F. App'x 133 (3d Cir. 2012) (citing *Kopec v. Tate*, 361 F.3d 772 (3d Cir. 2004); *Gilles v. Davis*, 427 F.3d 197 (3d Cir. 2005)).

In this case, whether Defendants used excessive force is an issue of fact. Plaintiff claims that extreme force was used to wake him and physically remove him from his home when he was wearing only his underwear and socks on a cold night. (Compl. ¶ 12). He claims that officers "twisted Plaintiff's arms, forcibly restrained Plaintiff, and caused Plaintiff's head to come into contact with walls as they escorted him outside and into the police vehicle." (Compl. ¶ 13). He also claims that police assaulted him while at the Nutley PD Precinct. (Compl. ¶ 15). Defendants contend that Plaintiff slammed his own head against a door and deny any assault. (Defs.' Reply Br. at 6). These are genuine issues of material fact.

Moreover, Defendants' argument that police surveillance images refute Plaintiff's claims of abuse is unconvincing. Although none of the images show the abuse that Plaintiff claims, this does not mean that abuse did not occur. Along the same lines, the Court is not persuaded by Defendants' argument that Plaintiff was not abused because Plaintiff failed to file any criminal complaint or to make any complaint to nurses that treated him that night. Just because Plaintiff did not report the incident that night does not necessarily mean that the events Plaintiff alleges did not occur. Because there are genuine contested issues of fact as to the force used by the officers, this Court denies summary judgment on the excessive force claim.[5]

---

[5] Because the Court has denied summary judgment on the excessive force claim in Count One, finding genuine contested issues of material fact, the Court also denies the motion for summary judgment that Defendants make on the same grounds relating to the common law assault and battery claim in Count Eight of the Complaint.

11

### c. SUPERVISORY LIABILITY

Next, Defendants move for summary judgment on supervisory liability claims against the Township of Nutley and the Nutley Police Department in Counts Three, Four, Five, Six, Seven, Thirteen, and Fourteen. These counts range drastically. The Third Count alleges denial of medical care; the Fourth Count alleges that the police department is liable for constitutional violations; the Fifth Count asserts municipal liability; the Sixth asserts conspiracy claims; the Seventh asserts failure to intervene; the Thirteenth alleges common law respondeat superior; and the Fourteenth alleges negligent supervision, retention, and training. Plaintiff does not present any case law to oppose Defendants' argument. Rather, Plaintiff points out that the Defendants only move for summary judgment with respect to the Township Defendants on these claims, not with respect to the individual Officers, who could still be liable under these claims.

Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior. *See City of Oklahoma City v. Tuttle,* 471 U.S. 808, 824 n. 8 (1985); *Monell v. New York City Department of Social Services,* 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); *Natale v. Camden County Correctional Facility,* 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).

The Court's reasoning in *Monell* has created a "two-path track to municipal liability," based on either a municipal policy or custom that resulted in a constitutional violation. A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." *Kneipp v. Tedder,* 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481 (1986) (plurality opinion)). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 404 (1997). Custom may also be established by evidence of "knowledge and acquiescence." *Beck v. Pittsburgh*, 89 F.3d 966, 971 (3d. Cir. 1996).

In addition, plaintiff bears the burden of proving that the municipal practice was the proximate cause of the injuries suffered. *Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3d. Cir. 1990). In order to do this, "plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." *Id.* at 851.

The Third Circuit has noted:

> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need."

*Natale,* 318 F.3d at 584 (footnote and citations omitted).

Here, Plaintiff claims that the Nutley Police Department and Township of Nutley engaged in a policy and custom of "deliberate indifference to the rights of persons in their domain" and to the use of unlawful physical force, and that the Police Department failed to institute a procedure to investigate reports of police officer misconduct. (Compl. ¶¶ 19-21). But, Plaintiff fails to present any evidence whatsoever showing that there was such a municipal policy or custom that led to the constitutional violations alleged. He also fails to show that there was a statement of policy, violation of law by a policymaker, or an obvious failure to act by a policymaker. Additionally, he presents no proof of inadequate training. As such, summary judgment will be granted on Counts Four, Five, Thirteen, and Fourteen in their entirety because these Counts are specifically brought against the Nutley Police Department and the Township of Nutley. Summary judgment is also granted on Counts Three, Six, and Seven as to the Township of Nutley and the Nutley Police Department, but these Counts remain as claims against Defendant Officers Van Dorn, Stewart, and Rodriguez.

D.    TORT CLAIMS ACT COUNTS

Defendants finally move for summary judgment on Plaintiff's common law claims in the Tenth, Eleventh, and Twelfth Counts for common law negligent infliction of emotional distress, common law negligence, and vicarious liability, respectively. Defendants argue that the New Jersey Tort Claims Act bars these claims. Plaintiff has not responded to this argument.

Under the New Jersey Tort Claims Act, N.J.S.A. § 59:2–2, a "public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment." However, the statute limits a victim's potential recovery. It states:

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical

14

treatment expenses are in excess of $3,600.00. For purposes of this section medical treatment expenses are defined as the reasonable value of services rendered for necessary surgical, medical and dental treatment of the claimant for such injury, sickness or disease, including prosthetic devices and ambulance, hospital or professional nursing service.

The New Jersey Supreme Court has held that to recover for pain and suffering from a public entity or employee, "a plaintiff must prove by objective medical evidence that the injury is permanent." *Brooks v. Odom*, 150 N.J. 395, 403 (1997). "Temporary injuries, no matter how painful and debilitating are not recoverable. Further, a plaintiff may not recover under the Tort Claims Act for mere 'subjective feelings of discomfort.'" *Id.* Claims of emotional distress are included in the term "pain and suffering". *Ramirez v. United States*, 998 F. Supp. 425, 437 (D.N.J. 1998) (citing *Ayers v. Jackson Twp.*, 106 N.J. 557, 576 (1987)).

Here, Plaintiff claims that he suffered bodily injury in the form of bumps on his head, short term dizziness, an injured right wrist, a cut wrist, and scars on his wrist. But, Plaintiff never claims that he underwent a substantial and permanent loss of a bodily function. Nor does he provide objective medical evidence showing that he suffered any permanent mental or physical injuries. Thus, he is unable to recover under the Tort Claims Act. Defendants' motion for summary judgment on Count Ten, Eleven, and Twelve is thus granted.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendants' motion for summary judgment. An appropriate Order will be filed herewith.

                 s/ Stanley R. Chesler

                 STANLEY R. CHESLER

                 United States District Judge

Dated: May 9, 2017